UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHANNON W.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-5818 MJP

**ORDER REVERSING AND REMANDING FOR AN AWARD OF BENEFITS**

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the ALJ erred by discounting two medical opinions, her testimony, and her mother's lay witness statement and by failing to find she met a listed impairment. Dkt. 9. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for an award of benefits under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 42 years old, has a high school education, and has no past relevant work. Dkt. 7, Administrative Record (AR) 31-32. Plaintiff applied for benefits in July 2015, alleging disability as of November 28, 2013. AR 132. Plaintiff's applications were denied initially and on reconsideration. AR 141, 151. After the ALJ conducted a hearing in August 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 83, 16-33.

ORDER REVERSING AND REMANDING
FOR AN AWARD OF BENEFITS - 1

## THE ALJ'S DECISION

Under the five-step disability evaluation process set forth in 20 C.F.R. § 416.920, the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the application date.

**Step two:** Plaintiff has the following severe impairments: psychotic disorder, non-specified; and substance abuse disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity:** Plaintiff can perform work at all exertional levels. She can understand, remember, and carry out simple instructions, and make judgments commensurate with unskilled work. She can respond appropriately to supervision but cannot work in close coordination with coworkers where teamwork is required. She can deal with occasional changes in the work environment. Her work cannot require contact with the general public to perform work tasks.

**Step four:** Plaintiff has no past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR 18-33. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1. The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.     Medical Opinions**

A treating physician's opinion is generally entitled to greater weight than an examining physician's opinion, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

**1.     Dr. Barkin**

Plaintiff's treating psychiatrist, Karin Barkin, M.D., filled out a Medical Source

Statement in May 2016. AR 407-09. Dr. Barkin opined that Plaintiff was moderately to markedly limited in most work-related abilities. *Id*. The ALJ gave Dr. Barkin's opinions "little weight." AR 29. The Commissioner concedes that some of the ALJ's reasons were erroneous. Dkt. 12 at 11. The ALJ discounted Dr. Barkin's opinions for lack of "reference to specific treatment encounters or more specific objective findings" but, as the Commissioner acknowledges, Dr. Barkin's treatment notes must be considered in connection with her opinions. AR 29; *see Revels*, 874 F.3d at 663. At the end of Dr. Barkin's opinions, Plaintiff's "care-coordinator" added a paragraph of observations. AR 709. The ALJ stated that this "complicat[ed] any analysis" of the opinions. AR 29. However, if the ALJ felt that the added sentences created ambiguity, the ALJ had a duty to develop the record to clarify the treating doctor's opinions. *See Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

The Commissioner maintains, however, that the ALJ permissibly discounted Dr. Barkin's opinions because they conflicted with treatment notes stating Plaintiff was doing "well" or "stable" and because Plaintiff was capable of appropriate behavior in a courtroom for her child custody case. Dkt. 12 at 11-12; AR 29.

         **a)**     **Treatment Notes**

Incongruity between a treating physician's opinions and her own medical findings can be a "specific and legitimate reason for rejecting" the opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, however, the treatment notes that the ALJ cited reference only Plaintiff's self-reports that she was doing well. These contrast with her husband's and mother's accounts, her own admissions that she continued to experience auditory hallucinations, and Dr.

Barkin's consistent conclusions that Plaintiff lacked insight into her condition.

On April 23, 2015, Plaintiff reported she had been "doing well" but Dr. Barkin concluded she was doing worse than in the previous visit. AR 356, 358. Dr. Barkin observed that Plaintiff continued to respond to nonexistent voices and Plaintiff's mother reported that Plaintiff had stopped visiting her father because "the voices" told her not to visit him. AR 356. Dr. Barkin assessed Plaintiff's insight into her condition as "limited." AR 358. At the next appointment, on May 7, 2015, Dr. Barkin concluded Plaintiff seemed better because, for the first time that year, she was not responding to nonexistent voices; however, Plaintiff missed the voices. AR 359, 361. By the time Plaintiff returned on June 11, 2015, she was hearing voices again despite, as her husband confirmed, taking her medication reliably every day. AR 362. Dr. Barkin concluded that Plaintiff's insight was "impaired." AR 364. The ALJ does not refer to the next few treatment notes, which recount Plaintiff being reported to Child Protective Services for physically abusing her children. AR 365-68. In the next treatment note the ALJ cited, from August 26, 2015, Plaintiff continued to have auditory hallucinations, although she reported that her husband and mother felt she was "doing well." AR 373. On September 8, 2015, Plaintiff reported her mood had been "stable" but she still heard voices, although rarely, and she missed the voices. AR 379.

Plaintiff's self-reports that she had been doing well or was stable do not contradict Dr. Barkin's opinions, especially in light of Dr. Barkin's assessment that Plaintiff lacked insight into her condition.

### b) Courtroom Behavior

Conflict with a claimant's activities "may justify rejecting a treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Treatment notes indicate that Plaintiff

sat quietly during a "long wait" before her child custody case was called, then "behaved appropriately in court," articulating her thoughts clearly. AR 371. The ALJ found this inconsistent with the attention limitations Dr. Barkin opined. AR 29. The ALJ also found Plaintiff was capable of "wholly appropriate behavior, and competent self-advocacy, in a highly stressful courtroom setting…." *Id.*

Dr. Barkin opined marked limitations in Plaintiff's "ability to maintain attention and concentration for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)" and her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 408. The record does not reveal how long Plaintiff was in court, either waiting for or participating in her case. An ALJ may draw reasonable inferences from the record but unfounded speculation is prohibited. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). A "long wait" is not substantial evidence supporting a finding that Plaintiff can maintain attention and concentration for two hours at a time, especially four times a day, in contradiction of Dr. Barkin's opinions.

Regarding social behavior and self-advocacy, Dr. Barkin opined that Plaintiff was only mildly limited in the ability to ask simple questions or request assistance. AR 408. Plaintiff was moderately limited in the abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. AR 408. A moderate limitation was defined as one that "seriously interferes with the individual's ability to

perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week…." AR 407. The ALJ did not explain how these opined limitations conflicted with attending court. A single instance of maintaining appropriate behavior for an unspecified length of time does not contradict Dr. Barkin's opinions. The record does not indicate, for example, that Plaintiff received criticism or instructions from an authority figure such as a judge, or that she had to interact with the public. And any interaction did not last anywhere close to eight hours a day, five days a week.

The Court concludes the ALJ erred by discounting Dr. Barkin's opinions without a specific and legitimate reason.

**2. Dr. Neims**

Dan Neims, Psy.D., examined Plaintiff in October 2015 and July 2017 and filled out a psychological evaluation each time. AR 425, 704. In both evaluations, Dr. Neims opined moderate to marked limitations in every area except the ability to carry out simple tasks. AR 427, 705-06. As the Commissioner appears to concede, the ALJ erred by discounting Dr. Neims' opinions on the ground that they relied on only one, or only two, examinations of Plaintiff. *See* Dkt. 12 at 12-13. The ALJ gave "great weight" to the opinions of doctors who never examined Plaintiff, and the Commissioner's regulations prefer examining over non-examining doctors' opinions in general. AR 28; 20 C.F.R. § 416.927(c).

The ALJ also gave both opinions "little weight" as unsupported by Dr. Neims' own findings and contradicted by other medical findings and Plaintiff's appropriate courtroom behavior. AR 30.

    **a)    Inconsistency with Own Findings**

Incongruity between a physician's opinions and her own medical findings is a "specific

and legitimate reason for rejecting" the opinions. *Tommasetti*, 533 F.3d at 1041. The ALJ cited the "sparse" justifications in Dr. Neims' opinions, and "illegible" accompanying examination notes. AR 30. Dr. Neims conducted clinical interviews and mental status examinations for both evaluations. AR 428-30, 706-09. He found abnormalities in appearance, speech, mood, affect, thought process and content, abstract thought, and judgment in both examinations. AR 426, 428, 706-07. In the 2017 interview he observed "florid psychosis" centered on "hallucinations involving religious content." AR 705. These extensive abnormal findings are not incongruent with the moderate to marked limitations Dr. Neims opined.

The accompanying notes that the ALJ found illegible show the raw data from the testing Dr. Neims performed, the results of which he then reported in the mental status examination section of the form. *Compare*, *e.g.*, AR 432 (handwritten 3s) with AR 428 (typed "3/3, 3/3, 3/3"). If the ALJ felt he could not properly evaluate Dr. Neims' opinions without reviewing his raw test results, the ALJ had a duty to develop the record. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them."). Illegibility is not a specific and legitimate reason to discount an examining doctor's opinions.

### b) Inconsistency with Other Medical Evidence

Conflict with other medical evidence can be a valid reason to discount a medical opinion. *See Batson*, 359 F.3d at 1195 (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions). Here, the ALJ found Dr. Neims' opinions undermined by other mental status examinations

around the same time that found Plaintiff "wholly within normal limits" except for auditory hallucinations. AR 30.

However, the results cited by the ALJ were not entirely normal. In most exams, thought process was "concrete," memory was impaired ("poor historian"), and/or judgment/insight was only "fair." AR 376, 381, 416. Only in one appointment, in October 2016—about a year after Dr. Neims' first evaluation and almost a year before his second—was the mental status examination entirely normal. AR 537. Looking at the record as a whole, and bearing in mind that mental health symptoms in particular wax and wane, this single result is insufficient to discount all of Dr. Neims' opinions. *See Garrison*, 769 F.3d at 1017.

### c) Plaintiff's Courtroom Behavior

As with Dr. Barkin's opinions, the single event where Plaintiff behaved appropriately in court does not contradict Dr. Neims' opinions and is not a sufficient reason to discount them.

The Court concludes the ALJ erred by discounting Dr. Neims' opinions without a specific and legitimate reason.

### B. Plaintiff's Testimony

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678.

At the August 2017 hearing, Plaintiff testified that even on medication she felt she was disabled because people living under her house were subjecting her to electric shocks daily, and she felt she was being drugged and tortured. AR 93, 98, 96. She hears voices that sometimes

say "horrible" things. AR 99.

It is always difficult to analyze the testimony of someone who is, undisputedly, delusional. While she is not describing reality accurately, she may be telling the truth as she sees it. The probative value of her statements lies less in their accuracy than in what they reveal about her mental impairments. Here, the ALJ discounted Plaintiff's testimony that she was "incapable of work due to the symptoms she experienced" based on improvement with medication, inconsistency with objective medical evidence, inconsistent statements, and conflict with her activities. AR 22-28.

### 1. Improvement

The Commissioner appears to concede that Plaintiff's impairments were disabling during at least some portion of the relevant period, but argues that she was not disabled when properly medicated. Dkt. 12 at 2. Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of Social Security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). But mere improvement is not enough, unless the improvement was sufficient to restore Plaintiff to employability or in some other way undermine her testimony. As the Ninth Circuit has clarified, "a few short-lived periods of temporary improvement" do not undermine a claimant's disability claims. *Garrison*, 759 F.3d at 1018. And because it is a "'questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation[,]'… we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Id.* at 1018, n. 24 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

The record affords compelling reason to view Plaintiff's failure to strictly adhere to

medication guidance as part of her underlying mental affliction. Plaintiff consistently reported she did not need medication and in fact medication was the problem. She told her care coordinator, "I have no mental illness. [My husband] wants me on this medication or I have to leave." AR 337; *see also* AR 324 (halving her dosage "didn't feel any different"). Her treating physician consistently assessed her insight into her condition as impaired. *See*, *e.g.*, AR 322, 326, 348, 364. Another care provider wrote that Plaintiff's "symptoms of psychosis are rather persistent, but [she] believes that she's at baseline at the current time." AR 336; *see also* AR 358 (Plaintiff "denies having psychotic symptoms but she laughs at times for no apparent reason"). Dr. Neims observed that Plaintiff "[d]emonstrates poor insight regarding aspects of mood disruption and psychosis and seeks to attribute mood changes and aspects of psychosis to psychiatric medications." AR 709.

As evidence that Plaintiff's impairments were controlled effectively, the Commissioner cites treatment notes from January to April 2015. Dkt. 12 at 4-5. These notes show that Plaintiff continued to have psychotic symptoms, attending to nonexistent voices, and her doctor assessed her insight and judgment as limited. AR 321, 342, 358. At a single appointment, in May 2015, Plaintiff's doctor concluded that her "psychotic symptoms seem to be fairly effectively treated at this point." AR 361. By the next appointment, the voices had returned and her judgment and insight were impaired. AR 364. This short-lived period of temporary improvement does not undermine Plaintiff's disability claims. *See Garrison*, 759 F.3d at 1018. These notes do not constitute substantial evidence that Plaintiff's impairments were effectively controlled.

The ALJ cited a treatment note where Plaintiff asked to change medication, because she did not like having to eat with the medication immediately before bedtime, and said she "misses" the voice. AR 25 (citing AR 379). The ALJ finds these indicate "motivations for non-

compliance with medication guidelines." AR 25. Seeking to restore hallucinated voices, far from being a normal motivation, is a sign of Plaintiff's underlying affliction. *See Garrison*, 759 F.3d at 1018, n. 24. As for the medication change, Plaintiff's doctor agreed to make changes. AR 392. There is nothing improper in asking her doctor for a medication change based on her preference or convenience.

The ALJ also asserted that Plaintiff's marijuana use "complicates" analysis of her impairments. AR 26. In April 2016, Plaintiff reported she had started smoking "small amounts" since December 2015. AR 464. But there is no evidence that Plaintiff's condition was substantially different before and after December 2015. Psychotic symptoms were present throughout the record.

The Commissioner finds it suspicious that Plaintiff stated she "hoped she would be awarded Social Security" benefits. Dkt. 12 at 6 (citing AR 708). If a desire to receive benefits were disqualifying, no claimant would ever receive benefits. There is nothing suspicious in hoping to receive benefits to which she is entitled or believes she is entitled.

"Caution in [inferring an ability to work from reports of improvement] is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work." *Garrison*, 759 F.3d at 1017-18. Here, the only doctors who opined Plaintiff could work were state agency non-examining doctors who reviewed the record in January 2016 at the latest, before Dr. Barkin's May 2016 medical source statement and Dr. Neims' July 2017 psychological evaluation. *See* AR 149, 407, 704. No doctor who reviewed the full record concluded that Plaintiff was able to work. The ALJ's inference that Plaintiff was not disabled because she showed some improvement is not supported by the record.

ORDER REVERSING AND REMANDING
FOR AN AWARD OF BENEFITS - 12

The ALJ erred by discounting Plaintiff's testimony on the grounds that her impairments were controlled effectively with medication.

### 2. Objective Medical Evidence

Objective medical evidence is a relevant consideration in assessing a claimant's testimony. *Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

The ALJ cited several instances where Plaintiff stated she was doing well, was stable, or was managing her condition. AR 27. Given how limited Plaintiff's insight was into her condition, as discussed at length above, these statements have little probative value and cannot constitute clear and convincing reasons to discount her claims of disability.

### 3. Inconsistent Statements

"Factors that an ALJ may consider in weighing a claimant's credibility include … inconsistencies in testimony…." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). The ALJ found it to be a "notable" inconsistency that Plaintiff asked to change medications but, by the end of the appointment, Plaintiff agreed to stay on the same medication. AR 24 (citing AR 362, 364). These are not inconsistent statements, but indications that Plaintiff changed her mind after discussing the matter with her doctor.

The ALJ also found that Plaintiff's statements in July 2017 to Dr. Neims that "she felt tortured and drugged by her medications" and that worsening voices bothered her "a great deal" were "contrary to" her reports to providers around the same time. AR 27 (citing AR 416-17, 558, 560). Dr. Neims did not report that Plaintiff stated the voices were worsening. She told him "[t]he voices are scary"; she also stated that she heard the voice of God and "[h]e just

want[s] to bug me all the time…." AR 709. In February 2017 Plaintiff reported her current meds were "the best combination she has been on" and she was "managing at this time." AR 416-17. In May 2017 Plaintiff reported "voices bothering her but able to tolerate them." AR 558. In June 2017 she reported she "will increase the music or tv when voices bother her." AR 560. Although Plaintiff may have phrased things differently, these statements simply do not contradict her statements to Dr. Neims.

The ALJ erred by discounting Plaintiff's disability claims based on inconsistent statements.

### 4. Activities

An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639. The ALJ cited "getting her car repaired, shopping for herself and preparing her own meals," and behaving appropriately in court. AR 28. As discussed above, a single instance of behaving appropriately in her child custody case does not indicate that Plaintiff can do so for a full day, day after day and week after week. The ALJ does not explain how the other, rather minimal, activities contradict Plaintiff's disability claims. *See Molina*, 674 F.3d at 1112 ("a claimant need not vegetate in a dark room in order to be eligible for benefits"). These are activities Plaintiff can choose when to do and, in the case of preparing meals, can perform in the comfort of her own home.

The Commissioner also argues that Plaintiff's ability to pay bills when she was married indicates a greater functional capacity than alleged. Dkt. 12 at 8 (citing AR 104). While Plaintiff may have reported paying bills was "no problem," her husband reported that her handling money "caused problems" because she spent money inappropriately. AR 104, 67; *see*

*also* AR 324 (Plaintiff was "taking out money from her husband's account and obtaining new credit cards"). This is not substantial evidence contradicting Plaintiff's disability claims.

The Court concludes the ALJ erred by discounting Plaintiff's testimony without a clear and convincing reason.

**C.      Lay Witness Statements**

An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). In July 2017, Plaintiff's mother gave a statement describing her observations of Plaintiff. AR 301-03. Plaintiff lived with her for eight months, during which she "observed daily her struggle with the voices in her head constantly tormenting her. … Daily routine activities were disrupted by these voices." AR 301. While writing the statement, she received two phone calls, about an hour apart, from Plaintiff "in a hysterical state begging me to make 'these people' stop shocking & torturing her." AR 303.

The ALJ gave "little weight" to Plaintiff's mother's statement because she did not review the objective medical evidence, instead "solely using her powers of observation and incorporating (necessarily) the claimant's own allegations"; and because Plaintiff was "capable of independently traveling to care encounters after her mother stopped attending them with her." AR 31.

"The fact that lay testimony … may offer a different perspective than medical records alone is precisely why such evidence is valuable" in a disability determination. *Diedrich*, 874 F.3d at 640. Failure to review objective medical evidence is not a germane reason to discount lay witness statements. Plaintiff's mother's own observations are precisely what makes lay testimony valuable. She observed Plaintiff far more frequently than any provider, especially while Plaintiff lived with her. And incorporating Plaintiff's statements is not a germane reason

ORDER REVERSING AND REMANDING
FOR AN AWARD OF BENEFITS - 15

to discount her mother's statement. Reporting Plaintiff's statements is not intended to prove that people are shocking and torturing her, but rather to show that Plaintiff's functioning is disrupted by her mental impairments.

Plaintiff's ability to travel to appointments without her mother accompanying her also is not a germane reason to discount the lay witness statement. The statement describes that, even after Plaintiff would no longer allow her mother to accompany her (because her mother would inform providers of her "daily struggles"), her mother continues to keep track of Plaintiff's appointments and remind her of them daily for several days leading up to the appointment. AR 302-03. Plaintiff's ability to physically drive herself to her appointments does not contradict or undermine her mother's statement.

The ALJ erred by discounting Plaintiff's mother's lay witness statement.

**D.        Listing 12.03, Schizophrenia Spectrum and Other Psychotic Disorders**

Listing 12.03 can be met by medical documentation of delusions or hallucinations, which are undisputed in this case, plus extreme limitation of one or marked limitation of two of the "paragraph B criteria": understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. Pt. 404, Subpart P, App'x 1, § 12.03. The criteria examine sustained, independent, appropriate functioning; moderate indicates "fair" functioning, marked means "seriously limited" functioning, and extreme means "not able" to function. 20 C.F.R. Pt. 404, Subpart P, App'x 1, § 12.00F(2)(c)-(d). The ALJ found that Plaintiff had only moderate limitations in all four areas. AR 19. Plaintiff argues the ALJ erred by ignoring evidence that she had marked or extreme limitation in all but the first criterion. Dkt. 9 at 3.

In the alternative, Plaintiff argues that this matter must be remanded for consideration of

additional evidence appended to her opening brief, showing an involuntary psychiatric hospitalization beginning September 2018, which was after the ALJ's decision and the Appeals Council's denial of review. Dkt. 9 at 7. However, Plaintiff offers no argument that this newly submitted evidence bears on the period of time addressed by the ALJ's November 2017 decision. Thus the Court will not address this newly submitted evidence further.

The Commissioner argues that no medical opinion establishes marked or extreme limitations in the B criteria. Dkt. 12 at 15-16. However, the Commissioner's regulations require an ALJ to consider "all of the relevant medical and non-medical evidence" in evaluating the B criteria. 20 C.F.R. Pt. 404, Subpart P, App'x 1, § 12.00F(3)(a). There is no requirement for a medical opinion that addresses the B criteria by name.

Given the erroneous rejection of Dr. Barkin's and Dr. Neims' opinions and the errors in evaluating the evidence supporting them, the ALJ's evaluation of the paragraph B criteria cannot be upheld. However, because the Court concludes that this case should be remanded for an award of benefits (see below), it is not necessary to analyze the paragraph B criteria further in this order.

**E.     Scope of Remand**

Plaintiff requests the Court remand for an award of benefits or, in the alternative, for further administrative proceedings. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence,

ORDER REVERSING AND REMANDING
FOR AN AWARD OF BENEFITS - 17

whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. The Court has flexibility, however, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021. Here, the Court finds that all three elements are met to remand for benefits.

First, the record is fully developed and remarkably consistent. Plaintiff experienced nearly constant psychotic symptoms, which were reduced only partially by medication compliance. The only conflict in the record is between treating physician Dr. Barkin's and examining psychologist Dr. Neims' opinions of disability and the state agency non-examining psychologists' opinions of non-disability. The ALJ gave the state agency psychologists' opinions "great weight" because they reflected "a complete review of the record" and were consistent with a view of Plaintiff as capable "when medication compliant…." AR 28. These reasons were not supported by substantial evidence and in fact conflict with the evidence. The state agency psychologists did not review the entire record. They did not have the benefit of records from 2016 and 2017 showing that even with consistent medication compliance Plaintiff continued to hear voices and think people in her house were shocking her. *See* AR 419. As discussed extensively above, the record consistently shows Plaintiff experienced some improvement when medication compliant but her impairments were not controlled effectively. Particularly when considered in light of the Commissioner's regulations prioritizing treating and examining doctors' opinions over non-examining doctors' opinions, the state agency psychologists' opinions do not create a conflict that requires remand for further administrative proceedings. *See* 20 C.F.R. § 416.927(c).

Regarding the second element, the ALJ improperly rejected Dr. Barkin's opinions, Dr. Neims' opinions, Plaintiff's mother's lay witness statements, and Plaintiff's disability claims.

Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled. Both Dr. Barkin and Dr. Neims opined Plaintiff was markedly limited in the ability to complete a normal workday and workweek. AR 408, 706. Dr. Barkin's form defined a marked limitation as one which "precludes the ability to perform the designated activity on a regular and sustained basis…. For those abilities that impact on task behavior, a limitation to 'Marked' indicates an inability to remain on task for 20% or more of the time." AR 407. At the August 2017 hearing, a vocational expert testified that a person who was off task for 20% of the time could not maintain any employment. AR 109-10. Thus these opinions alone establish disability.

The only remaining issue is whether the Court should exercise its discretion to remand for further proceedings. The record leaves no serious doubt that Plaintiff "is, in fact, disabled within the meaning of the Social Security Act." *Garrison,* 759 F.3d at 1021. The Court concludes that an award of benefits is appropriate in this case.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for an award of benefits under sentence four of 42 U.S.C. § 405(g).

DATED this 3rd day of May, 2019.

Marsha J. Pechman
United States District Judge

ORDER REVERSING AND REMANDING
FOR AN AWARD OF BENEFITS - 19